UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division

| | |
|---|---|
| ALEXIS WILKINS,<br><br>Plaintiff,<br><br>v.<br><br>VERSANT MEDIA GROUP, INC. d/b/a MS NOW et al.,<br><br>Defendants. | Case No.: 3:26-cv-725-EJR-LAE |

**PLAINTIFF'S OPPOSITION TO MOTION TO STAY DISCOVERY**

Defendants' primary argument in support of staying discovery is the claim that their jurisdictional challenge is likely to succeed. It is not. Defendants' personal jurisdiction argument rests on a misinterpretation of both the factual record and the governing legal standards. Because Defendants are unlikely to succeed on their jurisdictional challenge—and because the remaining factors weigh against a stay—this Court should deny the motion and permit discovery to continue.

## ARGUMENT

### I. Pendency of a motion to dismiss does not automatically entitle a movant to a stay.

This Court has broad discretion and inherent power to stay discovery, *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999), however, as recognized by Defendants, this Court "disfavors stays of discovery." ECF No. 24 at 1. The mere pendency of a motion to dismiss does not automatically establish good cause for a stay, and even when motions are dispositive, "the court rarely stays discovery unless the issues are

'clear-cut,' such that the 'likelihood of a jurisdictional dismissal is high.'" *Davis v. Kohler Co.*, No. 1:15-cv-1263-STA-EGB, 2018 WL 6517126, at *1 (W.D. Tenn. Sept. 7, 2018) (quoting *Hogan v. Cleveland Ave Restaurant, Inc.*, No. 2:15-cv-2883, 2017 WL 5005422, at *3 (S.D. Oh. Nov. 1, 2017)). The party seeking the stay must demonstrate both good cause and that the opposing party will not suffer prejudice from the delay. *Id.* at *1 (citing *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977)).

There is no "bright line favoring motions to stay when a defendant asserts lack of personal jurisdiction in a case." *Univ. of Tenn. Research Found. v. Caelum Biosciences, Inc.*, No. 3:19-cv-508-CEA-JEM, 2022 WL 2232192, at *5 (E.D. Tenn. June 21, 2022). The court instead must "consider the circumstances of each case and weigh the burden of discovery on a defendant versus the hardship to a plaintiff if discovery is stayed." *Id.* In this case, that balance weighs against the stay, particularly because Defendant's jurisdictional argument is not likely to succeed.

## II. Defendants' jurisdictional challenge is not clear cut and is unlikely to succeed.

### A. Defendants purposefully directed their conduct at Tennessee.

Defendants' jurisdictional argument hinges on the premise that their Article was published to a "national audience" without any particular targeting of Tennessee. But this framing ignores critical facts alleged in the Complaint that distinguish this case from the general publication cases on which Defendants rely.

### *1. The Article's content is focused on events and people in Tennessee and that is where it caused injury.*

Unlike the cases cited by Defendants, where online publications merely *mentioned* a forum state in passing, the Article here centers on events alleged to have occurred in Nashville, Tennessee. The Article states that Wilkins' friend was given a ride home "after a night of partying in Nashville." The purported misuse of FBI resources to benefit Ms. Wilkins, a Tennessee resident, during multiple alleged nights out in Nashville—a city in Tennessee known for late-night drinking and partying—is not only specifically about events and persons in the forum state, but the sensational nature of the story is augmented by the fact of these supposed incidents occurring specifically in Nashville, a party-town (as opposed to, say, Columbus, Ohio).

The Sixth Circuit's framework makes clear that the "focal point" of the challenged publication is critical to the jurisdictional analysis. *See Blessign v. Chandrasekhar*, 988 F.3d 889, 906 (6th Cir. 2021). While Defendants wish to portray the Article as being "about" the FBI Director generally, the Complaint alleges that it is equally "about" Ms. Wilkins—accusing her of requesting FBI agent escorts for her inebriated friends, depicting her and her friends as frequently partying and drinking in Nashville, and portraying her as abusing government resources. The focal point of the article therefore centers on Ms. Wilkins and the specific location of Nashville, Tennessee.

Moreover, Defendants were aware that Ms. Wilkins and her friends—subjects of the article—reside in Nashville. Defendants had previously reported on Ms. Wilkins' Nashville residence and her security detail there. When reporters knowingly

publish defamatory statements about a person they know to reside in a particular forum, and those statements describe events occurring in that forum, they can reasonably anticipate being haled into court there. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (jurisdiction proper where defendants' "intentional, and allegedly tortious, actions were expressly aimed at" the forum state and "they knew that the brunt of [the] injury would be felt by [plaintiff] in the State in which she lives and works"). As noted in *Calder*, "an individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly caused injury in California." The same applies here.

### *2. This case is distinguishable from* Blessing *and analogous to* Johnson v. Griffin.

Defendants lean heavily on *Blessing*, but that case is readily distinguishable. In *Blessing*, the defendants were private individuals posting on Twitter to their personal followers about a news event that happened to involve Kentucky students; they took "no affirmative steps to direct any communications to the plaintiffs or anyone else in Kentucky." *Blessing*, 988 F.3d at 906. Here, by contrast, Defendants are professional journalists employed by a major news organization who: (a) wrote an article specifically about a Tennessee resident; (b) reported on events that allegedly occurred in Tennessee; (c) knew the plaintiff lived in Tennessee; (d) knew that the location of these events in Nashville enhanced the sensationalist aspect of the story concerning late-night drinking; and (d) knew the brunt of any reputational harm would be felt in Tennessee, where Ms. Wilkins lives and works as a country singer.

This case more closely resembles *Johnson v. Griffin*, where the Sixth Circuit found personal jurisdiction because the defendant "intentionally targeted" Tennessee. 85 F.4th 429, 434 (6th Cir. 2023). While the targeting in *Johnson* took the form of communications with the plaintiff's Tennessee employer, the principle is the same: when a defendant's tortious conduct is knowingly aimed at a person in the forum and concerns events in the forum, jurisdiction is proper. The Article here does not merely mention Tennessee in passing; the location is central to the story.

*3. The Calder effects test supports jurisdiction.*

The Supreme Court's decision in *Calder* remains binding and directly applicable to cases involving intentional torts committed through publication. *See Calder*, 465 U.S. at 791. Under *Calder*, jurisdiction exists where: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum state; and (3) the defendant knew the plaintiff would suffer the harm there. *Id.* at 789–90. All three elements are satisfied here.

Although the Sixth Circuit has narrowed *Calder*'s application in the internet-publication context, it has not abrogated the effects test entirely. *See Blessing*, 988 F.3d at 906. Rather, *Blessing* instructs that something more than the plaintiff's residence in the forum is needed. Here, that "something more" exists: the Article reports on Tennessee-based events, the Article uses the Tennessee location (specifically, Nashville) to play up the sensational aspect of the story, Defendants had prior knowledge of Ms. Wilkins' Tennessee residence and the fact that she makes a

living as a country singer primarily in Tennessee, and the defamatory statements target Ms. Wilkins' Tennessee-based professional identity and reputation.

*4. At a minimum, the jurisdictional question is genuinely contested.*

While Ms. Wilkins has not fully briefed her opposition to the motion to dismiss, and has had to respond to this motion on short notice, she has genuine arguments to support jurisdiction in Tennessee beyond a mere conclusory allegation. Even if this Court concludes that personal jurisdiction is a close call, that alone counsels against a stay. A discovery stay is inappropriate where the underlying motion to dismiss does not present a "clear" path to dismissal. *See Davis*, 2018 WL 6517126, at *1. The very fact that the jurisdictional question requires careful balancing of *Blessing*, *Johnson*, and *Calder*, demonstrates that Defendants' motion is far from the slam dunk that Defendants portray.

## III. The remaining factors do not support a stay.

### A. Plaintiff will be prejudiced by delay.

Contrary to Defendants' conclusory assertion that Ms. Wilkins faces "no prejudice" from a stay, delay in a defamation action is inherently prejudicial. Memories fad, witnesses become unavailable, and documents are lost or destroyed. This is particularly true in a case involving FBI personnel who may rotate assignments or leave government service, and where Defendants' purported sources may become harder to identify with the passage of time.

### B. The First Amendment does not immunize defendants from discovery.

Defendants invoke the First Amendment as though it were a blanket shield against discovery. It is not. Defendants' appropriate remedy, if any particular aspect of discovery is burdensome or sensitive, is through case-specific objections and protective orders during discovery, not a wholesale stay.

### C. The burden on Defendants is not "unusual."

Defendants argue discovery would be "unusually burdensome," but the burdens they describe—depositions, document production, and potential privilege disputes—are standard features of defamation litigation. That third-party discovery from Director Patel and the FBI may involve complexity is not a reason to halt all discovery; it is a reason for the Court to manage discovery with appropriate phasing and limitations.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Stay Discovery. Defendants' personal jurisdiction challenge is unlikely to succeed, and the remaining factors do not justify the disfavored relief of halting discovery in this action.

Dated: August 18, 2026

ALEXIS WILKINS
By Counsel

Respectfully submitted,

/s/ *Jason C. Greaves*

Jason C. Greaves, *PHV*
Jared R. Roberts, *PHV*
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200

Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

Kurt V. Beasley
WATERFORD LAW GROUP, PLLC
P.O. Box 1089
Franklin, Tennessee 37065
Phone: (615) 373-2500
kbeasley@waterfordlaw.com

*Counsel for Plaintiff Alexis Wilkins*

**CERTIFICATE OF SERVICE**

I certify that on August 18, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, and was delivered, by electronic mail, to the Defendants, as follows:

Michael Berry
BALLARD SPAHR
BerryM@ballardspahr.com
*Counsel for Defendants*

/s/ *Jason C. Greaves*
Jason C. Greaves
*Counsel for Plaintiff*