**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| ALEXIS WILKINS,<br><br>Plaintiff,<br><br>v.<br><br>VERSANT MEDIA GROUP, INC. d/b/a MS NOW, CAROL LEONNIG, and KEN DILANIAN,<br><br>Defendants. | Civil Action No.: 3:26-cv-00725<br><br>District Judge Eli J. Richardson<br>Magistrate Judge Luke A. Evans<br><br>JURY DEMAND |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER**


BALLARD SPAHR LLP

Michael Berry (*pro hac vice*)
Jacquelyn N. Schell (*pro hac vice*)
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
berrym@ballardspahr.com
schellj@ballardspahr.com

BRADLEY ARANT BOULT CUMMINGS LLP

Ty E. Howard (No. 26132)
Brooke Sgambati
1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 244-2582
thoward@bradley.com
bsgambati@bradley.com

*Counsel for Defendants Versant Media Group, Inc., Carol Leonnig, and Ken Dilanian*

Plaintiff Alexis Wilkins' Opposition tries to conjure this forum's jurisdiction by claiming Defendants knew the Article would injure her here. Precedent holds that is insufficient. To avoid the jurisdictional problem, her claims could be transferred to the District of Columbia, which she agrees is a proper and convenient venue. On the merits, the Opposition tries to mask the flaws in Wilkins' claims by distorting the Article, which says nothing defamatory about her and does not cast her in a highly offensive, false light. Her claims should be dismissed.

## I. <u>The Court Does Not Have Personal Jurisdiction Over Defendants.</u>

Wilkins contends this Court has specific jurisdiction based on *Calder v. Jones*, which she claims authorizes jurisdiction when out-of-state defendants "knowingly cause the injury" in the forum state. Opp. at 6 (quoting *Calder*, 465 U.S. 783, 789-90 (1984)). Yet, the Opposition ignores that in *Walden v. Fiore*, the Supreme Court clarified *Calder*, explaining "the *defendant*, not the plaintiff … must create contacts with the forum State." 571 U.S. 277, 291 (2014) (emphasis added). Thus, in *Walden*, a Nevada court "could not exercise jurisdiction over a defendant from Georgia based merely on the defendant's knowledge that his false affidavit would cause harm to two plaintiffs in Nevada." *Maxitrate Tratamento Termico E Controles v. Super Sys., Inc.*, 617 F. App'x 406, 408 (6th Cir. 2015) (citing *Walden*, 571 U.S. at 289-90).

Wilkins admits that post-*Walden*, "the Sixth Circuit has narrowed *Calder*'s application" in cases involving online communications. Opp. at 9. In such cases, jurisdiction is absent unless a communication was "specifically directed at the forum state." *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 (6th Cir. 2021). Still, Wilkins recycles arguments rejected in *Walden*, *Blessing*, and the many cases cited by Defendants that Wilkins fails to address. Mem. at 8-9. Like plaintiffs in those cases, Wilkins claims Defendants "wrote an article specifically about a Tennessee resident" and knew she would "feel any reputational harm" there. Opp. at 6-7.

Recognizing she needs "something more," Wilkins makes much of the fact the Article "reports on Tennessee-based events." Opp. at 10. But that argument falls short for three reasons.

***First***, as Wilkins acknowledges, Sixth Circuit precedent holds that jurisdiction lies only when an online communication "intentionally targeted" the forum state. Opp. at 7 (quoting *Johnson v. Griffin*, 85 F.4th 429, 434 (6th Cir. 2023)). The communication at issue here, a news report published by a national media outlet to a national audience, does not "closely resemble[]" the communications or claims in *Johnson*. *Id.* That case was an "employment dispute" that arose from tweets that were not merely about the plaintiff – they were either "directly sent to" the plaintiff's Tennessee-based employer or "urged [defendant's] followers to pressure" the employer to fire the plaintiff. *Johnson*, 85 F.4th at 434-35. Those communications "intentionally cultivate[d] contacts with the forum State." *Id.* at 433. The Sixth Circuit emphasized the importance of this intentional targeting, explaining that *Blessing* "would have come out differently" if the defendant "had written to the students' Kentucky school" or lied "in a message to their principal." *Id.* at 434.[1] This "intentional targeting" is not present here.

***Second***, the Article's reference to events in Tennessee does not "connect[]" Defendants to this forum "in a meaningful way." *Walden*, 571 U.S. at 290. Courts have time and again held that merely reporting on events that occurred in a state is insufficient to confer jurisdiction absent an "intent" to target that state. Mem. at 9 (collecting cases, including cases from other Circuits cited favorably by the Sixth Circuit). Wilkins does not address any of these decisions.

***Third***, even if referencing Tennessee could somehow trigger jurisdiction in some

---

[1] The pre-*Walden* unpublished decision from the Southern District of Ohio cited by Wilkins presents the same situation as *Johnson*. There, the court had jurisdiction because the defendant made false statements about the Ohio-based plaintiff directly to plaintiff's customers "to harm [its] business" for the benefit of her employer, which was a competitor. *StarForce Nat'l Corp. v. Transcor, Inc.*, 2010 WL 11639831, at *13 (S.D. Ohio Dec. 15, 2010) (cited in Opp. at 8-9).

circumstances, here, the Article's "focal point" is not Tennessee – it is Kash Patel and his conduct as a federal official. *See* Compl. ¶ 23 (characterizing Article as a "vehicle to attack Director Patel"). The Article's reference to this State is no different than its mentioning Patel's "tirade" in "Salt Lake" and his "use of a government jet" to see Wilkins "in Pennsylvania." Mot. Ex. 1 at 3-4. That the Article also mentions Nashville as the location agents were stationed when Patel, from some other location, ordered them to give Wilkins' friend a ride, is the type of "random," "fortuitous," and "attenuated" connection that fails to satisfy due process. *Blessing*, 988 F.3d at 904 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).[2]

## II. <u>Transfer to the District of Columbia Is Warranted.</u>

All parties agree the District of Columbia is a proper venue. Wilkins admits key facts supporting transfer: she "occasionally travels" to Washington, D.C., and "there are many witnesses located" there. Opp. at 13-14 (noting "evidence will be located in Washington, D.C."); *see Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 878 (M.D. Tenn. 2019) (witness convenience is "perhaps the most important factor"). While Wilkins contends some witnesses are here, she does not name them or say how many there are. Opp. at 14; *see Carrico v. Uponor, Inc.*, 2026 WL 2169011, at *5 n.10 (M.D. Tenn. July 28, 2026) (Richardson, J.) (factor favored movant where opponents did not identify "name or provide any proof that they are (currently) located in Tennessee"). Even weighing Wilkins' choice of forum, Defendants have carried their burden to demonstrate that the District of Columbia is "more convenient." Mem. at 11-14.

## III. <u>Wilkins Fails to State Claims for Defamation or Invasion of Privacy.</u>

The Opposition recognizes a publication is defamatory only if it holds a person up to

---

[2] Wilkins contends that the Article "purports to rely on sources within the forum," Opp. at 8, but the Article says nothing about the sources' location(s). Even so, a source's location does not establish that a defendant's online publication is "intentionally targeted" at a particular forum.

"public hatred, contempt, or ridicule," and that this question can be decided "as a matter of law." Opp. at 15-16. It then argues the Article "names" her and "describes her specific conduct." *Id.* at 16. That is not in dispute. The issue is whether the Article says anything defamatory *about her*. As Wilkins concedes, a plaintiff cannot pursue a claim when the alleged defamation is "'of and concerning' a third party." *Id.* That is why her claim fails. The Article reports on incidents involving Wilkins' friend as an example of *Patel's* "personal use of bureau resources" and why *he* "is under intense scrutiny." Mot. Ex. 1 at 1, 3.

The Opposition seeks to avoid that issue by reframing the Article as portraying Wilkins as "using a personal relationship with the FBI Director to divert federal agents from their duties." Opp. at 19. Wilkins tries to downplay the Article's reporting she "asked" and "requested" agents to help her friend, contending "the gravamen of the defamatory charge is not the verb Defendants chose." *Id.* But, the language is what matters: the Court "look[s] to the words themselves." *Hudik v. Fox News Network, LLC*, 512 F. Supp. 3d 816, 825 (M.D. Tenn. 2021). Here, as Wilkins concedes, the Article's language makes clear that "it was only the FBI Director's personal intervention . . . that compelled them to comply." Opp. at 17. That is the key – as the Opposition puts it, the Article "framed this conduct in the broader context of a pattern of FBI abuse, including comparisons to William Sessions" – who, like Patel, was the *FBI Director*. *Id.* at 17-18 (further noting the Article "quoted a former FBI agent calling the conduct 'outrageous' and 'demonstrative of *Kash Patel's* complete lack of judgment and integrity" (emphasis added)).

Wilkins might complain that reporting her requests "may not be a good look for Plaintiff and may reflect somewhat negatively on [her], but that does not mean that it subjects [her] to hatred, contempt, or ridicule." *Hudik*, 512 F. Supp. 3d at 831. It is unlike *Battle v. A & E Television Networks, LLC*, where defendants "presented th[e] Plaintiff" herself as "a drug

smuggler who just happened not to get caught." 837 F. Supp. 2d 767, 774 (M.D. Tenn. 2011) (cited in Opp. at 16-17). Nor is it like the headline in *Hudik*, which accused plaintiff himself of "perpetrating a 'scam.'" 512 F. Supp. 3d at 834 (cited in Opp. at 18-19). Here, any abuse of resources was "perpetrated" by Patel, which is what the headline says: "Kash Patel ordered FBI detail to give girlfriend's pal a lift home: sources." As in *Aegis Sciences Corp. v. Zelenik*, the "message conveyed" is about the public official, not the beneficiary of that official's actions. 2013 WL 175807, at *6 (Tenn. Ct. App. Jan. 16, 2013).

For false light, the Opposition's argues that by reporting Wilkins was with a friend during a "night of partying in Nashville," the Article implies she is a "habitual heavy drinker." Opp. at 22. That reading is unreasonable. Wilkins concedes the Article says nothing about whether she drank alcohol on those nights or whether she ever drinks alcohol. Thus, her claim has nothing in common with the photo in *S.E. v. Chmerkovskiy*, which showed the plaintiff-child "drinking what appears to be a sugary beverage." 221 F. Supp. 3d 980, 985 (quoted in Opp. at 22). Wilkins also does not contest that she goes out with friends in Nashville, some friends drink alcohol, and she "may have an occasional alcoholic drink" too. Opp. at 24; Mem. at 23. Regardless, nothing in the Article could be read to suggest "habitual" drinking, Opp. at 24, as it mentions only "at least two" incidents between "spring" and December, Mot. Ex. 1 at 1.

In any event, portraying Wilkins' "lifestyle" as "revolv[ing] around late night partying" would not be highly offensive. *See* Opp. at 23 (recognizing inquiry is objective). Drinking alcohol is not "stigmatized in the community." *State v. Itzol-Deleon*, 2016 WL 1192806, at *26 (Tenn. Crim. App. Mar. 28, 2016). If alcohol consumption is not prejudicial when presented as evidence in a criminal trial where a person's liberty is at stake, it can hardly be "highly offensive to a reasonable person" in reporting on nights out with a friend in Nashville.

Dated: September 1, 2026

Respectfully submitted,

/s/ *Michael Berry*
Michael Berry (*pro hac vice*)
Jacquelyn N. Schell (*pro hac vice*)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500
berrym@ballardspahr.com
schellj@ballardspahr.com

Ty E. Howard (No. 26132)
Brooke Sgambati
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
(615) 244-2582
thoward@bradley.com
bsgambati@bradley.com

*Counsel for Defendants Versant Media Group, Inc., Carol Leonnig, and Ken Dilanian*